UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

XIN YUE GUO a.k.a XIN YUE on behalf of himself and as an assignee of YISHENG LI and YISHENG LI.

        Plaintiffs,

-against-

STEWART LOR,

        Defendant.

---

Civil Action No.:
2:20-cv-05099-JMV-MF

VIA ECF

**DEFENDANT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIMS**

## ANSWER

Defendant and Counterclaim Plaintiff Stewart Lor ("Mr. Lor" or the "Defendant" or "Counterclaimant"), by and through his undersigned counsel, hereby responds to the Amended Complaint (the "AC") of Plaintiffs and Counterclaim-Defendants Xin Yue Guo ("Mr. Yue") and Yishing Li ("Mr. Li") (collectively, "Plaintiffs" or "Counterclaim-Defendants") as follows:

## INTRODUCTION

1.    Defendant admits that Plaintiffs' claims herein arise out of an agreement entered into by and between Mr. Lor and Mr. Li and relate to an investment by Mr. Li into a company that was owned by Mr. Lor and Mr. Yue called Fanz Co., Ltd. ("Fanz"). The remaining allegations contained in paragraph 1 of the AC are denied.

## JURISDICTION AND VENUE

2.    Defendant admits that the amount in controversy exceeds $75,000 and that the Court has subject matter jurisdiction, and denies all other allegations in Paragraph 2 of the AC.

3.    Defendant admits that venue is proper in the District of New Jersey, but denies all other allegations in Paragraph 3 of the AC. By way of further explanation, Defendant denies that he is currently "domiciled in and resides" in New Jersey.

## PARTIES

4. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 4 and on that ground denies those allegations.

5. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 5 and on that ground denies those allegations.

6. Defendant admits that he is an American citizen and that he has family in New Jersey. Defendant denies all other allegations in paragraph 6.

## THE FACTS GIVING RISE TO THIS ACTION

7. Defendant admits that Mr. Li was an investor in Fanz and that Fanz was a Cayman Islands company. The remaining allegations contained in paragraph 7 of the AC are denied.

8. Admitted.

9. Admitted.

10. Defendant admits that Mr. Li signed a Securities Purchase Agreement (the "Li Agreement") on April 23, 2016. To the extent the allegations in paragraph 10 purport to describe, quote or characterize written communications or documents, the communications or documents speak for themselves and should be read as a whole.

11. Defendant admits that the Li Agreement was amended (the "Li Amendment") on May 18, 2016. To the extent the allegations in paragraph 11 purport to describe, quote or characterize written communications or documents, the communications or documents speak for themselves and should be read as a whole.

12. Paragraph 12 of the AC alleges a legal conclusion to which no response is required. To the extent a response is required, the allegations in paragraph 12 purport to describe, quote or

characterize written communications or documents, the communications or documents speak for themselves and should be read as a whole.

13. Admitted.

14. Admitted.

15. Denied.

16. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 16 and on that ground denies those allegations.

17. Denied.

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT

18. Defendant repeats his responses to the allegations in Paragraphs 1 through 17 above as if fully set forth herein.

19. Defendant admits that he entered into the Li Agreement and Li Amendment, but otherwise denies the allegations of Paragraph 19 of the AC. To the extent the allegations in paragraph 19 purport to describe, quote or characterize written communications or documents, the communications or documents speak for themselves and should be read as a whole.

20. Admitted.

21. Denied.

22. Denied.

23. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 23 and on that ground denies those allegations.

24. The allegations in Paragraph 24 of the AC state a legal conclusion to which no response is required. To the extent a response is required, the allegations in Paragraph 24 are denied.

25. The allegations in Paragraph 25 of the AC state a legal conclusion to which no response is required. To the extent a response is required, the allegations in Paragraph 25 are denied.

## SECOND CAUSE OF ACTION: EQUITABLE CONTRIBUTION

26. Defendant repeats his responses to the allegations in Paragraphs 1 through 25 above as if fully set forth herein.

27. The allegations in Paragraph 27 of the AC state a legal conclusion to which no response is required. To the extent a response is required, the allegations in Paragraph 27 are denied.

28. The allegations in Paragraph 28 of the AC state a legal conclusion to which no response is required. To the extent a response is required, the allegations in Paragraph 28 are denied.

29. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 29 and on that ground denies those allegations.

30. The allegations in Paragraph 30 of the AC state a legal conclusion to which no response is required. To the extent a response is required, the allegations in Paragraph 30 are denied.

31. The allegations in Paragraph 31 of the AC state a legal conclusion to which no response is required. To the extent a response is required, the allegations in Paragraph 31 are denied.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Mr. Yue and Mr. Li do not have standing as neither of them has been harmed.

## SECOND AFFIRMATIVE DEFENSE

The consideration that the Plaintiffs purportedly rely upon for the Li Assignment is worthless and does not constitute valid consideration upon which an assignment may be based. Therefore, the Li Assignment is void due to lack of consideration.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs never gave Mr. Lor notice of the Li Assignment. The Li Assignment is therefore void under Chinese law.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' AC is barred, in whole or in part, because any damages awarded to Plaintiffs would constitute unjust enrichment.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' causes of action must be dismissed based on the documentary evidence.

## SIXTH AFFIRMATIVE DEFENSE

Defendant performed all duties, obligations and responsibilities owed to Plaintiffs under the Li Agreement and never breached the agreement.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by their failure to mitigate their damages.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrines of waiver, latches, estoppel, and unclean hands.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' AC is barred, in whole or in part, because any alleged harm was due to intervening and/or supervening causes.

WHEREFORE, Defendant demands that judgment be entered in his favor and against Plaintiffs.

## COUNTERCLAIMS[1]

Defendant/Counterclaimant Mr. Lor, as and for his Counterclaims against Plaintiffs/Counter-Defendants Mr. Yue and Mr. Li, alleges as follows:

### INTRODUCTION

1. Mr. Yue and Mr. Li concocted a scheme to fraudulently assign Mr. Li's interests in the Li Agreement and Li Amendment to Mr. Yue for worthless consideration and without notice to Mr. Lor. Through their Amended Complaint, Mr. Yue and Mr. Li seek to extract damages from Mr. Lor based upon that worthless consideration.

2. Prior to Mr. Yue and Mr. Li's fraudulent scheme, Fanz entered into a loan agreement with a third party for an RMB 3 million loan. Mr. Yue and Mr. Lor agreed that, if Fanz did not repay the loan, they would each be personally responsible for 50% of Fanz's payment obligations under the loan.

3. Mr. Lor paid the full amounts due under the loan, plus interest, totaling RMB 4.08 million (or approximately $630,000).

4. Mr. Yue owes Mr. Lor 50% of the $630,000 that Mr. Lor paid under the loan, or approximately $315,000

---

[1] Capitalized terms not defined in the Counterclaims shall have the meanings ascribed to them in the above Answer to Plaintiffs' Amended Complaint.

## THE PARTIES

5. Mr. Lor is a U.S. citizen. Mr. Lor maintains a residence in New Jersey where his wife currently resides.

6. Mr. Yue is, upon information and belief, a citizen of the Dominican Republic who currently resides in China.

7. Mr. Li is, upon information and belief, a Chinese citizen who currently resides in China.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000. Mr. Lor is a citizen of New Jersey. Mr. Yue is a citizen of the Dominican Republic who is currently residing in China. Mr. Li is a citizen of the People's Republic of China who resides in China.

9. This Court further has subject matter jurisdiction as this Counterclaim arises out of the same transactions or occurrences as the AC and therefore is part of the same case or controversy.

10. Venue is proper in the District of New Jersey as Plaintiffs' Complaint and AC were brought in the District of New Jersey.

## FACTUAL ALLEGATIONS

**Mr. Yue and Mr. Lor Were Longtime Business Partners**

11. Prior to Mr. Yue's fraudulent scheme described herein, Mr. Yue and Mr. Lor were friends and business partners. Between 2004 and 2016, Mr. Lor and Mr. Yue founded and led multiple successful businesses.

12. During this timeframe, Mr. Yue took advantage of his business relationship with Mr. Lor. Mr. Yue withdrew a disproportionate amount of funds from businesses that he and Mr.

Lor founded. Mr. Yue led Mr. Lor to believe that he would return these funds, but that money never came. Mr. Yue instead used these funds to cover expenses from his divorce with his ex-wife. He also paid himself extravagant salaries of millions of dollars, and secretly borrowed over a million dollars from Mr. Lor's brother. Mr. Lor did not discover the loans from his brother until recently. The above amounts totaled millions of dollars.

13. In February 2016, Mr. Lor and Mr. Yue co-founded Fanz. At the time, Mr. Lor was hesitant to keep working with Mr. Yue due to his past actions as described above. However, Mr. Lor did not yet know the full extent of Mr. Yue's greed.

14. Fanz was founded with the purpose of engaging in entertainment, fan development, and mobile technology, as well as to invest in Korean television, movies, video games and virtual reality content. Mr. Lor's title at Fanz was President. Mr. Yue's title at Fanz was Chief Executive Officer ("CEO").

15. Mr. Lor and Mr. Yue's goal was for Fanz to reach an initial public offering ("IPO") on the NASDAQ stock exchange prior to the end of 2017. Mr. Lor and Mr. Yue sought to raise capital in order to enable Fanz to accomplish that goal.

**Mr. Li Invests in Fanz**

16. On April 23, 2016, Mr. Lor and Mr. Yue entered into an agreement with plaintiff Li Yisheng ("Mr. Li") to invest $500,000 into Fanz (the "Li Agreement"). Mr. Li received 500,000 shares of Fanz in return for his initial investment of $500,000.

17. On May 18, 2016, Mr. Li, Mr. Yue, and Mr. Lor signed an Amendment to the Li Agreement (the "Li Amendment").

**Ms. Hu Invests in Fanz**

18.     In March 2017, Fanz, Mr. Yue, and Mr. Lor entered into a verbal agreement with Ms. Xiuli Hu ("Ms. Hu"), whereby Ms. Hu agreed to loan Fanz RMB 3 million (the "Hu Agreement") at an interest rate of RMB 30,000 per month.  The RMB 3 million balance under Hu Agreement was required to be repaid in March 2020.  To the extent Fanz was unable to pay this amount, it was to be paid by Mr. Yue and Mr. Lor personally.  Mr. Lor used his own house as security for the Hu Agreement.

19.     Mr. Lor and Mr. Yue also agreed verbally that if Fanz was unable to repay Ms. Hu, Mr. Lor and Mr. Yue would each be personally responsible for repaying 50% of any amount owed to Ms. Hu under the Hu Agreement.

**The Collapse of Fanz**

20.     Under Mr. Lor's leadership, Fanz's product development and sales grew rapidly throughout 2016 and 2017.  Mr. Yue was generally absent from the company, and did not actively run Fanz as would expected of a CEO.  He also made poor investment decisions and withdrew a disproportionate amount of funds from Fanz in comparison to Mr. Lor. Mr. Yue's actions were unfortunately reminiscent of his past actions with other companies. These poor investment decisions led Mr. Yue to become isolated from Mr. Lor.  Mr. Yue withdrew from Fanz's affairs.

21.     Although Mr. Yue's title was CEO, the only task which he focused on was fundraising.  Mr. Yue failed in this task and did not obtain any new financing for Fanz in 2017.  Mr. Yue's failures forced Mr. Lor to use his own property as collateral for a loan to keep Fanz alive.  Mr. Yue's poor business decisions and lack of effort as CEO made it impossible to keep Fanz afloat.

22. On September 14, 2017, Mr. Yue wrote a handwritten letter to Mr. Lor in which he apologized for taking an unequal distribution of money from Fanz, and for his poor decision making with Fanz and other companies. Mr. Yue specifically mentioned an investment in Yuansheng Culture Property Exchanges in Yunnan province (the "Yuansheng Investment") from a previous business that he managed with Mr. Lor. Mr. Yue admitted that he ran the Yuansheng Investment into the ground and never compensated Mr. Lor for his poor actions. The loss due to the Yuansheng Investment totaled close to RMB 100 million.

23. Mr. Yue further accepted in the letter that Fanz's hardships were his fault and that he was grateful for Mr. Lor's tolerance. Mr. Yue recognized Mr. Lor's superhuman efforts in trying to keep Fanz afloat, including how Mr. Lor would endlessly prepare and practice for important meetings and that Mr. Lor was so tired that it seemed he would vomit blood from the stress.

24. In November 2017, Mr. Lor stepped away from Fanz. Fanz soon after discontinued its operations. Fanz was not able to obtain Series A financing or complete an IPO before it discontinued its operations. Mr. Lor then began repaying Fanz's past obligations.

**Mr. Lor Pays the Full Amount to Ms. Hu**

25. In compliance with the Hu Agreement, between March 2017 and March 2020 (a period of thirty-six months), Mr. Lor paid Ms. Hu RMB 30,000 per month in interest, totaling RMB 1.08 million in interest payments.

26. Further, in March 2020, Mr. Lor paid Ms. Hu the entire RMB 3 million principal balance that was owed to Ms. Hu under the Hu Agreement.

27. Mr. Lor thus paid Ms. Hu a total of RMB 4.08 million under the Hu Agreement, which included RMB 3 million in principal and RMB 1.08 million in interest. RMB 4.08 million is roughly equivalent to $630,000 at current exchange rates.

28. To date Mr. Yue has not paid Mr. Lor or Ms. Hu any amount under the Hu Agreement.

**Mr. Li and Mr. Yue's Fraudulent Assignment**

29. In or around November 2019, Mr. Yue and Mr. Li devised a scheme to fraudulently assign Mr. Li's interest in the Li Agreement and Li Amendment to Mr. Yue.

30. The Counterclaim-Defendants' fraud was designed to enable Mr. Yue to extract money from his past partner Mr. Lor. Mr. Yue has been specially designated in China for his bad debts and currently owes money to multiple parties. This lawsuit is a last-ditch attempt for him to take more money from his ex-business partner.

31. This scheme culminated in Mr. Li and Mr. Yue signing an assignment agreement on November 27, 2019 (the "Assignment").

32. The Assignment waived Mr. Li's right to recovery from Mr. Lor under the Agreement and instead transferred Mr. Li's right of recovery to Mr. Yue.

33. In exchange for waiving Mr. Li's right to recovery under the Li Agreement and Li Amendment, the Assignment supposedly gave Mr. Li shares of a Cayman Islands company, Sea and Sand Entertainment Limited ("Sea & Sand"), that are allegedly worth $500,000.

34. Sea & Sand was incorporated on July 9, 2019. Sea & Sand has no products, does not generate any revenue, has not had any new investors since July 2019, and upon information and belief Sea & Sand has stopped seeking new investments since at least March 2020. Mr. Yue

11

has admitted that "it is impossible to produce an accurate description of the value of Sea and Sand until after cross-border travels have been re-established."

35. Any stock in Sea & Sand is worthless and does not constitute valid consideration upon which an assignment may be based. The Plaintiffs' claim that Mr. Li received consideration worth $500,000 in exchange for the Assignment is false.

36. Further, under Chinese law, Mr. Yue and Mr. Li were required to give Mr. Lor notice upon the occurrence of an assignment. Mr. Lor was never given notice of the Li Assignment.

37. The Assignment had a fraudulent purpose: to make it appear that Mr. Yue had fully paid the $500,000 owed to Mr. Li under the Li Agreement, such that Mr. Lor would be required to reimburse Mr. Yue for 50% of that amount, or $250,000. But as explained above, the Mr. Yue's supposed $500,000 payment to Mr. Li is a fabrication. Mr. Yue paid nothing of value to Mr. Li, and thus there is nothing for Mr. Lor to "reimburse."

38. Mr. Lor has been damaged by the fraudulent Assignment, including by having to engage counsel to defending himself against Plaintiffs' false claims in this action.

<b><u>FIRST COUNTERCLAIM</u></b><br><b>(Declaratory Judgment)</b>

39. Mr. Lor re-alleges and incorporates all allegations of the foregoing Counterclaims as if set forth in full herein.

40. As described herein, the Assignment was a fraudulent scheme.

41. Consideration is a necessary component of an assignment under American and Chinese law. The consideration used for the assignment, namely the shares in Sea & Sand, are worthless and cannot be the basis of a valid assignment.

42. Mr. Lor was never given proper notice of the assignment under Chinese law.

43. Mr. Lor seeks a judicial declaration that the Assignment is void under American and Chinese law for lack of consideration, and/or due to Mr. Li and Mr. Yue not giving Mr. Lor notice as required under Chinese law, and/or due to fraud.

## SECOND COUNTERCLAIM
### (Breach of Contract)

44. Mr. Lor re-alleges and incorporates all allegations of the foregoing Counterclaims as if set forth in full herein.

45. Under the terms of the Hu Agreement, Mr. Yue and Mr. Lor agreed to return RMB 3 million to Ms. Hu. Mr. Lor and Mr. Yue had an oral agreement that if Fanz was unable to repay Ms. Hu, then Mr. Lor and Mr. Yue would each be personally responsible for repaying 50% of any money owed to Ms. Hu under the Hu Agreement.

46. Mr. Lor paid Ms. Hu the full amount she was owed under the Hu Agreement, including RMB 3 million in principal plus RMB 1.08 million in interest.

47. Mr. Yue has not reimbursed Mr. Lor for 50% of the amount that Mr. Lor paid to Ms. Hu.

48. Mr. Lor has been harmed in an amount no less than $315,000.

## THIRD COUNTERCLAIM
### (Equitable Contribution)

49. Mr. Lor re-alleges and incorporates all allegations of the foregoing Counterclaims as if set forth in full herein.

50. Mr. Lor and Mr. Yue had an oral agreement that if Fanz was unable to repay Ms. Hu, then Mr. Lor and Mr. Yue would each be personally responsible for repaying 50% of any money owed to Ms. Hu under the Hu Agreement.

51. Mr. Lor paid Ms. Hu RMB 3 million pursuant to the Hu Agreement, plus RMB 1.35 million in interest.

52. To the extent the Court determines that the above-referenced oral agreement is unenforceable, Mr. Yue should be required, under principles of equity, to reimburse Mr. Lor for 50% of the amount that Mr. Lor paid to Ms. Hu.

53. Mr. Lor has been harmed in an amount not less than $315,000.

## FOURTH COUNTERCLAIM
### (Set-Off)

54. Mr. Lor re-alleges and incorporates all allegations of the foregoing Counterclaims as if set forth in full herein.

55. To the extent that the Court determines that Mr. Lor bears any liability to Plaintiffs under the AC, Mr. Lor is entitled to set off that liability based upon the amounts awarded to Mr. Lor in the above Counterclaim.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaimant respectfully requests that the Court enter judgment in his favor and against Plaintiffs/Counterclaim-Defendants as follows:

a) An award dismissing the AC;
b) A declaration on the first cause of action that the Assignment is void;
c) An award of damages on the second cause of action in the amount of the U.S. dollar equivalent of RMB 4.08 million, or approximately $315,000;
d) An award of damages on third cause of action (to the extent damages are not awarded under the second cause of action) in the amount of the U.S. dollar equivalent of RMB 4.08 million, or approximately $315,000;
e) Judgment on the fourth cause of action, declaring that any liability of Mr. Lor to Plaintiffs shall be set off against amounts awarded to Defendant on his Counterclaims;
f) An award of prejudgment interest and costs, including reasonable attorney's fees;
g) Any such other and further relief that the Court deems just and proper.

Dated: July 30, 2021 							Respectfully submitted,

                ABELL ESKEW LANDAU LLP

              By:    /s/ David M. Eskew   
                David M. Eskew
                41 Watchung Plaza, #501
                Montclair, NJ 07042
                Ph: 646-970-7342
                E-mail: deskew@aellaw.com

                Amiad Kushner (*pro hac vice*)
                SEIDEN LAW GROUP LLP
                322 Eighth Ave, Suite 1704
                New York, NY 10001
                Ph: 646-766-1914
                E-mail: akushner@seidenlawgroup.com

                *Attorneys for Defendant/Counterclaimant*