UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

---

XIN YUE GUO a.k.a XIN YUE on behalf of himself and as an assignee of YISHENG LI and YISHENG LI.

           Plaintiffs,

-against-

STEWART LOR,

           Defendant.

---

Civil Action No.:
2:20-CV-05099-JMV-JRA

**DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Court for the District of New Jersey, Defendant Stewart Lor ("Mr. Lor"), by his undersigned counsel, sets forth the following statement of material facts as to which no genuine issue exists.

**Founding Fanz Company Limited**

1.     In February 2016, Mr. Lor and Xin Yue Guo ("Mr. Guo") founded Fanz Co., Ltd. ("Fanz") as joint owners. *See* Lor Decl. at ¶ 3;[1] *see* Kushner Ex. 2 at ¶ 8;[2] *see also* Kushner Ex. 3 at ¶ 13.

2.     Fanz was founded with the purpose of engaging in entertainment, fan development, and mobile technology businesses, as well investing in Korean television, movies, video games and virtual reality content. *See* Lor Decl. at ¶ 4; *see also* Kushner Ex. 3 at ¶ 14.

3.     Mr. Lor's title at Fanz was President. Mr. Guo's title at Fanz was Chief Executive Officer. *See* Lor Decl. at ¶ 5; *see also* Kushner Ex. 3 at ¶ 14.

---

[1] All references to "Lor Decl. _" are citations to the Declaration of Stewart Lor filed herewith.
[2] All references to "Kushner Ex. _" are citations to Exhibits attached to the Declaration of Amiad Kushner filed herewith.

4. Mr. Guo and Mr. Lor shared the goal of securing Series A financing for Fanz and then having an initial public offering ("IPO") of Fanz on the NASDAQ stock exchange. *See* Lor Decl. at ¶ 6; *see also* Kushner Ex. 2 at ¶ 9; *see also* Kushner Ex. 3 at ¶ 15.

**Raising Capital for Fanz**

5. To accomplish this goal, Mr. Guo and Mr. Lor sought capital from a number of investors, including Plaintiff Yisheng Li ("Mr. Li"). *See* Lor Decl. at ¶ 7; *see also* Kushner Ex. 2 at ¶¶ 9-10; *see also* Kushner Ex. 3 at ¶¶ 15-16.

6. On April 23, 2016, Mr. Guo and Mr. Lor entered into an agreement with Mr. Li in which Mr. Li agreed to invest $500,000 in Fanz (the "Li Agreement") in exchange for 500,000 shares of Fanz. In or about April 2016, Mr. Li invested $500,000 in Fanz. *See* Lor Decl. at ¶¶ 8, 9; *see also* Kushner Ex. 2 at ¶ 10; *see also* Kushner Ex. 3 at ¶ 16.

7. On May 18, 2016, Mr. Li, Mr. Guo, and Mr. Lor signed an amendment to the Li Agreement (the "Li Amendment"). Under the terms of the Li Amendment, Mr. Guo and Mr. Lor agreed to reimburse Mr. Li's $500,000 investment (with Mr. Lor and Mr. Guo agreeing that they would each bear 50% of the $500,000 cost of the reimbursement) if Fanz did not acquire Series A funding within twenty-four months of Mr. Li's investment, *i.e.*, by April 2018. *See* Lor Decl. at ¶ 10; *see also* Exhibit A to the Lor Decl.; *see also* Kushner Ex. 2 at ¶¶ 11-13; *see also* Kushner Ex. 3 at ¶ 17.

**Fanz Collapses**

8. During the ensuing year, Mr. Lor actively worked for Fanz while Mr. Guo was generally absent from the company. *See* Lor Decl. at ¶ 11; *see also* Kushner Ex. 3 at ¶ 20.

9. Mr. Lor stepped away from Fanz in November 2017 and Fanz soon after discontinued its operations. Fanz did not acquire Series A funding before it ceased operations. *See* Lor Decl. at ¶ 12; *see* Kushner Ex. 2 at ¶ 14; *see also* Kushner Ex. 3 at ¶ 24.

10. Mr. Lor soon after began paying Fanz's past debts to its many investors. *See* Lor Decl. at ¶¶ 7, 13; *see also* Kushner Ex. 3 at ¶ 24.

**Mr. Guo Files This Action Against Mr. Lor**

11. On April 24, 2020, Mr. Guo filed the initial Complaint in this action against Mr. Lor on April 24, 2020. *See* Kushner Ex. 1. In the initial Complaint Mr. Guo, as an assignee of Mr. Li, asserted both a breach of contract and a contribution claim against Mr. Lor for $250,000 under the Li Agreement and Li Amendment. *See* Kushner Ex. 1 at ¶¶ 17 – 28.

12. On May 27, 2021, Mr. Li was added to this action as a plaintiff, and Mr. Guo and Mr. Li filed their amended complaint (the "AC"). *See* Kushner Ex. 2.

13. The AC was identical to the initial complaint except that it asserted a breach of contract claim on behalf of Mr. Li in the event that his alleged assignment of his claims to Mr. Guo was invalid. *See* Kushner Ex. 2 at ¶¶ 18-25 ("To the extent that the assignment of interest by Mr. Li to Mr. Yue is held invalid, then Mr. Li asserts a claim in the alternative against Mr. Lor").

14. The AC further alleged that Mr. Li assigned his rights against Mr. Lor under both the Li Agreement and Li Amendment to Mr. Guo in exchange for consideration equivalent to the "full amount" owed to Mr. Li:

> Mr. [Guo]thereafter paid Mr. Li consideration equivalent to the full amount that was owed to Mr. Li under the Agreement and the Amendment in exchange for an assignment of interest by Mr. Li to Mr. Guo of any and all rights Mr. Li has or had against Mr. Lor.

Kushner Ex. 2 at ¶ 16.

15. On August 1, 2021, Mr. Lor filed an Answer and Counterclaims. *See* ECF 42. Mr. Lor's Answer asserted a number of affirmative defenses to Plaintiffs' claims, including that Mr. Li did not have standing as he had not been harmed. *See* Kushner Ex. 3 at 4.

16. Mr. Guo's and Mr. Yue's Answer to the Counterclaims dated September 21, 2020, avers that "Mr. Li and Mr. [Guo] signed an assignment agreement," and that this assignment "involves the assignment of Mr. Li's interest to Mr. Yue and one of the considerations provided to Mr. Li was shares of the Cayman Islands company" mentioned in Mr. Lor's Counterclaims. *See* Kushner Ex. 4 at ¶ 31-33.

17. Mr. Guo voluntarily dismissed all of his claims with prejudice in October of 2021. *See* Kushner Exs. 5, 6. The sole remaining claim against Mr. Lor is Mr. Li's breach of contract claim. *See* Kushner Ex. 2 at 18-25.

**Documentary Evidence Confirms That Mr. Li Was Paid Consideration Equivalent to $500,000**

18. During discovery in this action, Mr. Li and Mr. Guo produced a November 27, 2019 assignment agreement (the "Assignment") in which Mr. Li assigned his rights to recover from Mr. Lor to Mr. Guo. In exchange, as provided in the Assignment, Mr. Guo agreed that:

> 1. Party A [Mr. Guo] gives Party B [Mr. Li] 1 million shares of Sea and Sand Entertainment Limited's stock, which is registered in Party B's name.
>
> . . .
>
> 3. Party B waives the right to recover the investment of $500,000 USD in FANZ CO., Limited to Guo and, at the same time, transfer the right of recovery from Stewart Lor to Guo.
>
> 4. If Sea and Sand Entertainment Limited fails to achieve IPO within three years of the date of signing this agreement, Party B has the right to request Guo to reimburse Yi the amount of $500,000 USD and an annual interest of 6.6%.

Kushner Decl. Ex. 7 at 2.

19. Mr. Guo likewise produced Sea & Sand Entertainment Limited's ("Sea & Sand") Certificate of Incorporation in the Cayman Islands. *See* Kushner Ex. 8.

20. Mr. Guo further produced Sea & Sand's Register of Members, which shows that Mr. Li was issued one million Ordinary shares of Sea & Sand on July 2, 2019. *See* Kushner Ex. 9.

21. Mr. Guo also produced Sea & Sand's Certificate of Incumbency signed on December 18, 2019, which shows that Mr. Li is one of sixteen holders of shares in Sea & Sand and that Mr. Li owns one million shares of Sea & Sand. *See* Kushner Ex. 10.

4

22. Mr. Guo's interrogatory responses dated December 14, 2020 ("Mr. Guo's Interrogatory Responses") provide the following information on Sea & Sand's business operations:

> Sea and Sand Entertainment was formed to shoot short films in Japan and France and to monetize those videos through paid membership for content access in the United States. The French video series was planned to be shot in Paris and included the Paris Girls series, Paris Food series, and the Paris Style Series. The Japanese video series was planned to be shot in Tokyo and included the Oriental Girls series and Tokyo food series. . .

Kushner Ex. 11 (Response to Interrogatory 1).

23. Mr. Guo's interrogatory responses further made clear that Mr. Li still owned one million shares of Sea & Sand as of December 14, 2020:

> Mr. Li still currently owns 1,000,000 shares of Sea & Sand.

Kushner Ex. 11 (Response to Interrogatory 5).

24. Mr. Guo likewise stated that "consideration equivalent to the full amount that was owed to Mr. Li," as referenced in Paragraph 15 of the Complaint, included Mr. Li's right to receive $500,000 with interest from Mr. Guo if Sea & Sand did not have an IPO.

> Mr. Li was not paid any consideration besides the shares in Sea and Sand. However pursuant to the assignment agreement by and between Mr. Li and Mr. Guo, if Sea and Sand does not become publicly listed within a certain set time frame, Mr. Guo agrees to pay Mr. Li the full amount of $500,000 with interest.

Kushner Ex. 11 (Response to Interrogatory 6).

**Mr. Li and Mr. Guo Admitted At Their Depositions That Mr. Li Received Consideration Equivalent to $500,000**

25. Mr. Li admitted at his deposition that he had read a Chinese translation of the Amended Complaint and that all facts alleged therein were true and correct:

> Mr. Kushner: Everything that is in the Amended Complaint is – that you allege in the Amended Complaint, is true and correct, right?

> Mr. Li: That is correct.
>
> Mr. Kushner: Before the Amended Complaint was filed, you saw a Chinese translation of the Amended Complaint, right?
>
> Mr. Li: Yes.
>
> Mr. Kushner: You were able to review and confirm in the Chinese translation that all of the allegations in the Amended Complaint are true and correct, right?
>
> Mr. Li: That's correct.

Kushner Ex. 12 at 19:11-19:23.

26. Mr. Li further admitted that he received one million shares of Sea & Sand, and that the Li Amendment gave Mr. Li the right to receive $500,000 plus interest at a rate of 6.6 percent per year from Mr. Guo if Sea & Sand failed to have an IPO:

> Mr. Kushner: Do you agree that you, in fact, received one million shares of Sea and Sand, Limited, from Mr. [Guo], correct?
>
> Mr. Li: I can only say that that transaction did happen. There was that process. . .
>
> . . .
>
> Mr. Kushner: Paragraph 4 [of the Assignment] states if Sea and Sand Entertainment fails to achieve an IPO within three years, you have the right to request Mr. [Guo] to pay you $500,000 plus interest at a rate of 6.6 percent per year; isn't that correct?
>
> Mr. Li: According to what is indicated in the contract, that's the case.

Kushner Ex. 12 at 14:17-14:21, 16:11-16:17.

27. Mr. Guo likewise admitted at his deposition that he transferred to Mr. Li one million shares of Sea & Sand, and that Mr. Li had the right to seek $500,000 from Mr. Guo at a 6.6% interest rate if Sea & Sand did not IPO:

> Mr. Kushner: How did you transfer those shares of Sea and Sand Entertainment to Mr. Li?
>
> Mr. Guo: It was Registered at the Registration Bureau
>
> . . .
>
> Mr. Kushner: If Sea and Sand Entertainment did not have an IPO, you guaranteed that you would pay Mr. Li $500,000 plus interest of 6.6 perfect per year, correct?
>
> Mr. Guo: The accurate description is that if Sea and Sand does not go IPO within two years or three years . . . then Party B [Mr. Li] has the right to request Party A [Mr. Guo] reimburse the Party B 500,000 U.S. dollars plus 6.6 percent interest per year.
>
> . . .
>
> Mr. Kushner: You transferred one million shares of Sea and Sand Entertainment to Mr. Li, correct?
>
> Mr. Guo: Correct. It was indicated clearly in the document.

Kushner Ex. 13 at 23:12-23:15, 24:5-24:15, 27:2-27:5.

ABELL ESKEW LANDAU LLP

By: DAVID M. ESKEW
deskew@aellaw.com
*Local Counsel for Defendant*

Amiad Kushner, Esq.
Andrew Sklar, Esq.
Seiden Law Group LLP
322 Eighth Avenue, Suite 1704
New York, New York 10001
(646) 766-1763
akushner@seidenlawgroup.com
*Counsel for Defendant*
*Admitted Pro Hac Vice*

7